SADIE S. HOWELL

*v.*

CLINTON G. HOWELL.

[Filed December 24th, 1900.]

A wife is a petitioner for a divorce because of alleged desertion. She testifies that her relations with her husband, at the time he went away, had been pleasant and agreeable; another member of the household testifies to the same effect. There is no proof that before he left there had been any disturbance of their connubial relations. The husband was in debt. This being the situation of the parties, the husband went away without previously letting his wife know of his purpose to leave. He had not much money and took her ring. On the day he left he wrote to her father stating that he was in debt and was going away; that it was no use to trace him, and asked the father to take the petitioner to his house and care for her. He did nothing to support his wife thereafter, obviously because he had no money. He corresponded with her, she sending him money. His letters showed no aversion to his wife or purpose to abandon her. The last one was couched in affectionate terms, and was written less than ten months next before the wife filed her petition, praying for a divorce because of alleged desertion for more than two years.—*Held*, the evidence does not show either a willful, a continuous or an obstinate desertion for two years before the filing of the bill, nor does it exhibit any intent to desert, in the sense that the defendant abandoned his wife.

On petition for divorce. On master's report *ex parte*.

*Mr. George M. Shipman*, for the petitioner.

GREY, V. C.

The petitioner seeks a divorce on the ground of desertion. The parties were married on June 2d, 1897, and after their marriage resided together, keeping house, until October 16th, 1897. The wife testified that their relations "had before then been pleasant and agreeable; no disturbance or anything of that kind between us." The husband's sister, who lived with them after their marriage until September, 1897, testified that "their relations

---

Howell *v.* Howell.

---

toward each other seemed to be loving." On October 16th, 1897, the husband went away, having told his wife that he was going to a neighboring village to post books for a butcher, as he had before done. His wife says that he had not much money, and that he took her ring. On the same day that the husband left he wrote to his wife's father, stating that he was in debt, and was going away; that it was no use in trying to trace him, as he would leave no trace; that the father should come and get the wife, and take care of her. She says she "don't remember what he said about coming back, but that he has never been back." This letter is not produced, and the contents above stated are narrated by the wife and her father. The latter testifies that the letter stated that the husband did not know as he would come back, nor where he would go, and that he wrote that he was in debt and could not pay. The father states that he burned this letter in clearing up his desk. That the husband was in debt appears to be undisputed, as the wife has since paid some of his debts. She has also sent him money since he went away. After that, on June 30th, 1899, he wrote to her from Chicago. She received this letter, and it is produced in evidence. Here is a copy:

"CHICAGO, June 30th, 1899.

"MY DEAR WIFE—You will see by this that I am in Chicago now. I left the hospital Thursday noon. I had been there for 21 days for my kidneys and was getting no better, so I left with the intentions of coming right on to New York City, which I should have done had I not met Dr. Munyon, of Chicago, on the train between here and St. Louis. In conversation with him I told him my trouble and he said I was not half as bad as the Drs. at the hospital said I was, and had several years to live yet with a little treatment. He advised me to stop in Chicago and try the Munyon remedies, and I have done so, and after 48 hours have had more relief than I had all the time in the hospital. I enclose an index of the diseases they cure and mark the three I am now taking by a figure 1, and the ones I have to take next by a figure 2. I suppose the letter you sent me in answer to the one I sent you will be returned to Vienna, as I told them to remail it to me there. Will you send it back love with your answer to this when you write me again? I will keep you posted as to my progress.

"I am going to work, after a ten days' rest, in the office of the Drs. in the Atwood building. I do not get but $5 per week and board, but the Dr. advised me to take it for a couple of months so I could be under their supervision for a time. That will just clear me $15 per month. Better than nothing. Perhaps I may be given something better then if I suit.

Howell *v.* Howell.

Don't forget to send me back the letter, love, as I don't want to lose any more communications from you.

"The weather is delightful here, cool nights and not too warm during the day.

"Remember me to sister and the other folks and don't forget your own husband.

"CLINTON G. HOWELL,

"148 So. Clark St.,

"C/ New Era Hotel.                                    "Chicago, Ill."

Since the husband left in October, 1897, he has done nothing to support the wife. Nothing has been heard from him since his letter of June 30th, 1899.

The Divorce act prescribes that divorces may be decreed for willful, continued and obstinate desertion for the term of two years.

The master to whom the cause was referred has reported that the evidence, in his opinion, justifies a decree for divorce on the ground of desertion. In stating the cause for the desertion, the master reports that he is of opinion that the husband had become indebted for part of the expenses of his marriage, and was probably ashamed to remain in a community where it would be known he had married on borrowed money, which he was unable to pay. The master relates that he had come to this conclusion from the testimony of the wife. The master further reports that, in his opinion, the correspondence does not take from the desertion the quality of willfulness, continuity or obstinacy, because the defendant "seems to have announced" to the petitioner his determination not to return until he could pay his debts, which the master holds is no excuse for his desertion of his wife. A careful examination of the evidence shows no such announcement by the husband to the wife. The proofs do not support any inference that the husband seemed to make such an announcement. There is, in truth, no evidence of desertion in the sense that when the defendant went away, or subsequently, he intended to abandon his wife.

The master appears to have assumed that a willful, continued and obstinate separation by the act of the husband, for an insufficient cause, is, when accompanied by non-support, a desertion, even if there be no proof that, in going away from the wife,

13

the husband had a will to abandon her. This has not been the construction of our statute. Mere absence is not desertion. *Taylor* v. *Taylor,* 1 *Stew. Eq. 207; Rogers* v. *Rogers, 3 C. E. Gr. 446.* The deserting party must forsake the other willfully, intending to abandon, and must obstinately continue in such a state of separation for the period of two years. *'Cass* v. *Cass, 4 Stew. Eq. 626.* If the evidence shows the continued existence and manifestation of connubial feeling on the part of the absent one within two years before the bill is filed, it cannot be said that there was a willful and continued desertion of the other party during the period of those two years. Nor is non-support sufficient to establish desertion. *Cook* v. *Cook, 2 Beas. 264.* Nor are both separation and non-support sufficient, unless the proof shows, also, a willful desertion. *Bourquin* v. *Bourquin, 6 Stew. Eq. 7.* Many cases happen daily where the necessities of life compel the husband, in his judgment, to separate from his wife, and also deprive him of the means of supporting her. If he, in such case, continues to hold her in affectionate regard, which he expresses to her, he cannot be said to have deserted her, even if he is mistaken in his judgment that he is compelled to absent himself. If he remain absent under a sense of shame, unaccompanied by an intent to abandon her, his absence is not a desertion.

The evidence in this case shows separation and non-support, but none of it indicates desertion. There is no proof of any purpose on the part of the husband to abandon his wife. On the contrary, the evidence shows that the husband, at the time he went away, was upon affectionate terms with his wife. There is no proof that he went because he wished to leave his wife, while there is positive proof that he went because he was in debt. His loving care for her is shown by the letter which he wrote to her father, at once on his departure, to come and take her home. A correspondence ensued between the husband and the wife, the details of which are proven only to the extent that the wife, who is now applying for a divorce, chooses to disclose them. So far as the testimony which the wife submits makes known the contents of the husband's letters, none of them showed any purpose on the part of the husband to abandon the wife.

Howell *v.* Howell.

She certainly did not believe that there was any such purpose on his part, for she sent money to him. His continued absence is justly referable to his poverty, not to a purpose to desert his wife. The one letter produced, written by the absent husband to the wife, far from showing a desertion, contains unquestionable evidences of the husband's continued affection for the wife, of his belief that she responds to his feeling, and that she is interested in his welfare, and of his expectation that she will (in accordance with his wish to receive her letters) forward to him the one which she had previously written to him, but which had been returned to her by the postal authorities.

This undoubted expression of the defendant's kindly feeling for his wife in June, 1899, is wholly irreconcilable with the existence, at that time, of a willful and continued purpose on his part to desert her.

The bill was filed on April 3d, 1900. The term of desertion must have, at least, begun on April 3d, 1898, and must have been continued for two years, while, as stated, the husband's letter shows that in June, 1899, within the two years, he deemed himself to be upon affectionate terms with the petitioner.

The evidence, in my view, fails to show any willful, continued or obstinate desertion by the husband of the wife. On the contrary, it indicates that in June, 1899, his feeling toward her was wholly inconsistent with a continued intent at that time to abandon her.

The above examination of the evidence shows that there was no desertion for the term of two years before the petition was filed. The petition should be dismissed.